## MATHER N. BOSWORTH vs. TIMOTHY M. BRYAN.

1. If an original deed, duly recorded in the proper office, within one year from its date, and more than twenty years from the time a copy is offered in evidence, or, though not so recorded, is yet accompanied by proof of such facts and circumstances, as together with the certificate of acknowledgment as proof, will satisfy the court that the person who executed the instrument is the person therein named as grantor, has been lost or destroyed. or is not in the power of the party who wishes to use it, a certified copy of the record thereof, and of the certificate of acknowledgment or proof, is admissible in evidence. Rev. Stat. 1843, 469-70.

2. The law of 1801 gave no authority to any officers to take the acknowledgment of deeds,

except judges of the general court and justices of the court of common pleas; but the act of July 7, 1807, (Tur. S. 178-9) authorized any justice of the peace of the district where the land was situate to take the examination and acknowledgment. The same effect was given to a deed acknowledged before a justice after 1807, as was before that time under the act of 1804 allowed to an acknowledgment before a judge or justice of the common pleas.

3. The mere production alone of a deed from the register of lands, for lands sold for taxes, makes out no title. The act is silent as to the effect of such a deed. Such effect only as upon general principles has been heretofore accorded to similar deeds made by the auditor, can be given.

## ERROR to Washington Circuit Court.

FRISSELL & JOHNSON, for plaintiff in error.

1st. That the deed from Evans and wife to James Bryan was not so acknowledged and recorded as to impart notice to subsequent purchasers. Ter. Laws, vol. 1, p. 48; Downing vs. Gallaher, 2 Serg. & Rawle. p. 458.

2nd. The judgment was for more land than the plaintiff below was, from the evidence, entitled to. The recovery was for 640 acres, when he had shown himself entitled to but one-half of one-half of the tract.

3rd. The damages were also excessive, being for the use and occupation of the whole tract, when he had shown himself entitled to but one-fourth part of it.

4th. That Bosworth's title under the register's deed offered in evidence in his behalf, precluded the plaintiff from the recovery of any damages against him. Acts 1842-3, p. 138, sec. 17, 18, 21.

5th. That by the register's deed a better title was vested in Bosworth to 480 acres of the land than Bryan's title papers showed in him, except to 160 acres.

NAPTON, J., delivered the opinion of the court.

This was an action of ejectment brought by Timothy M. Bryan to recover 640 acres of land in St. Francois county.

The land in controversy was originally settled by Isaac Jackson and Stephen Evans, and was confirmed by act of Congress to these persons, or their legal representatives, in 1815. It seems probable from the testimony given upon the trial of this action, that previous to 1808 there was a division of the tract between Jackson and Evans—the north-half being assigned to and occupied by Evans, and the south-half laid off to Jackson.

In April, 1808, Evans sold and conveyed his tract (320 acres) to James Bryan and Johnson Campbell, and in August of the same year, the latter (Johnson Campbell) conveyed his interest by mortgage with a power of sale to James Bryan. The consideration of the mortgage

deed was $300, money advanced by Bryan. In 1810 Johnson Campbell assigned his interest in the premises to Guy Bryan and William Morrison, in consideration of $600. This assignment is made upon the back of the deed from Evans to Bryan & Campbell, and is witnessed by J. Bryan, and duly acknowledged and recorded with the deed.

Before this time (1810) Jackson, who was or had been the settler of the south-half of the tract, had left the country, and as a witness on the trial testified, "it was the common talk in the neighborhood that Isaac Jackson had sold the south-half to one Mortello for $300," and this Mortello and James Bryan were also heard to have a conversation, from which the witness inferred that Mortello had transferred this contract with Jackson to Bryan, for which he received $100, and Bryan was to pay Jackson the $300, "when he appeared."

So that in 1810 James Bryan appears to have had possession of the whole tract, claiming absolute title to three-fourths of it, and being mortgagee of the other fourth. He continued to reside on this tract until 1820—he built a dwelling house on the north-east end, and a distillery. Morrison claimed the north-west corner, and upon this part of the tract were the *diggins*. In 1820 James Bryan removed to Herculaneum and died.

After Bryan left, James Morrison took possession of the premises, claiming under William Morrison. Some others succeeded, acknowledging a tenancy to Morrison, Kinney & Saunders, and Lunsford and McCormick successively occupied the premises. The premises finally fell into the possession of the present defendant, who bought up a tax title on it, and also got a deed from one J. C. Evans in 1843, a son of the Evans to whom the land was originally confirmed.

In October, 1820, James Bryan, after removing to Herculaneum, had conveyed the tract (claiming in the deed 480 acres of it) to Timothy M. Bryan, the plaintiff, then and still residing in Philadelphia.

The copy of the deed from Evans and wife to James Bryan was objected to. Proof was given, prior to its introduction, of diligent search for the original, in every place where there was any probability of finding it. The acknowledgment of the deed purports to be before a justice of the peace of Ste. Genevieve district, Big River township.

The defendant relied upon a deed from the register of lands, dated September 20, 1843, for the tract in question, from which it seems to have been sold for taxes assessed to the plaintiff in 1832-7-8-9, and 1840-1 and 2. The defendant also offered to prove the value of his improvements.

42

Under the instructions of the court, the plaintiff obtained a verdict and judgment.

One of the principal points taken in the case is founded upon the ruling of the circuit court in relation to the copy of the deed from Evans and wife to Bryan & Campbell. The recorded copy of this deed was admitted in evidence, and the jury were instructed that if the defendants had notice of this deed when he procured the deed of J. C. Evans in 1843, the latter conveyed no title. This instruction would appear to have been entirely superfluous ; for if the record of the deed was properly admitted, it could only have been upon the ground that it was properly recorded ; and if properly recorded, it was constructive notice to the defendant, and the question of actual notice did not arise.

We cannot doubt the propriety of admitting the copy of the deed in evidence. It fell directly within the 19th section of our law concerning evidence. It seems to have been the impression of counsel, that the acknowledgment of the original deed was not taken before a competent officer; but this is certainly an oversight. The law of 1804 gave no authority to any officers to take the acknowledgment of deeds, except judges of the general court and justices of the court of common pleas; but the act of July 7, 1807, (Terr. L. 178-9) authorized any justice of the peace of the district where the land was situate, to take the examination and acknowledgment. The same effect was given to a deed acknowledged before a justice of the peace, after 1807, as was before that time under the act of 1804 allowed to an acknowledgment before a judge or justice of the common pleas. The deed could be recorded, and its record imparted notice to subsequent purchasers or mortgages. This was the only object of recording a deed in those days, for it was not until 1825 that the record copy of the deed was admitted in evidence.

The deed from Evans was acknowledged before a justice of the peace of Ste. Genevieve county, where the land was then situate, and recorded immediately after the acknowledgment in the proper office. The instruction given by the court was unnecessary, but harmless.

It will be seen from the statement of facts, that the plaintiff made out a clear title to one-fourth of the tract, to wit: the quarter derived under this deed from Evans. James Bryant, the plaintiff's grantor, had also possession of the south-half of the tract originally belonging to Jackson, and occupied it as a part of his tract from 1810 to 1820 with a claim of title to it. That claim originated in a purchase from one Mortello. It is useless to inquire what the real worth of such a title as

Bosworth vs. Bryan.

this may be—there being no deed or writing—and the only evidence of its existence, a mere rumor that such a purchase had been made. It is sufficient, as we think, in the present case, that Bryan had possession and claimed the title, and never abandoned the possession. It is sufficiently obvious, that the occupants of the land for several years before the trial were never trespassers. I do not speak of James Morrison, who took possession under the title of W. Morrison, or of those who succeeded him claiming under the same title. The possession of these persons was not at all adverse to the right of Bryant. W. Morrison and Guy Bryant had an undoubted equitable title to one-fourth of the tract, that is, the west half of the north end. They had an assignment from Johnson Campbell in 1810 of his interest, and although at this time there was an outstanding mortgage of the same land to Bryan, I think, under the circumstances, there is every reason to believe that mortgage was extinguished. It is nearly forty years since its execution. It was made with a power of sale, and no sale appears ever to have been made. Two years after it was executed, the title (at least the equitable title) was passed to Morrison & Bryan for $600, and to this transfer J. Bryan was a witness. In the deed made by J. Bryan to the plaintiff in 1820, the former only claims 480 acres, clearly considering his mortgage as valueless. I mention these circumstances, not with a view to pass upon the value of Morrison's title in an action of ejectment, but merely to show that the entry of Morrison in 1821, and of those who entered under him, may very well be consistent with the rights of the plaintiff. Their possession was not adverse to his. Their title or claim did not necessarily conflict with his.

The plaintiff was then entitled to recover 480 acres of the tract sued for, upon prior possession of his grantor for ten years with a claim of right never abandoned.

The defendant offered a deed from the register of lands, executed in 1843. The act is silent as to the effect of such a deed. We can only give it such effect as upon general principles has been heretofore accorded to similar deeds made by the auditor. The mere production of the deed alone did not make out any title. We see no error in the instructions of the court in relation to the value and effect of this deed.

The recovery and judgment were for 640 acres; the judgment must be reversed and the cause remanded.